**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

JESSIE LEE SHUMAKER,

      Petitioner,

v.                                    Case No.: 3:17cv546-RV/MJF

SECRETARY OF THE
FLORIDA DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner Jessie Lee Shumaker has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 19). Shumaker replied. (Doc. 30). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Shumaker is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History

On February 12, 2012, Shumaker intentionally slashed Edward Lewis on the left side of his face and left ear with a box cutter.[2] Shumaker was charged in Escambia County Circuit Court Case No. 2012-CF-1230, with one count of aggravated battery with a deadly weapon. (Doc. 19, Attach. 1, Ex. A at 1).[3] A jury found Shumaker guilty as charged. (Doc. 19, Attachs. 2-3, Exs. C, D (transcript of jury selection and trial); Attach. 1, Ex. A at 103 (verdict)). The trial court adjudicated Shumaker guilty and sentenced him, as a habitual felony offender and a prison releasee reoffender, to 20 years in prison with a 15-year mandatory term. (Doc. 19, Attach. 1, Ex. A at 134-62 (sentencing transcript), Attach. 2, Ex. B at 216-27 (judgment and sentence)).[4] The Florida First District Court of Appeal ("First DCA")

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 19, Attachs. 2-3, Exs. C, D (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 19). The citation refers to the electronic attachment number followed by the exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

[4] At the sentencing hearing in Case No. 2012-CF-1230, Shumaker entered guilty pleas in Case No. 2012-CF-4987 (grand theft) and 2012-CF-5597 (felony petit theft). (Doc. 19, Attach. 2, Ex. A at 165-76 (transcript)). The trial court accepted the pleas and sentenced Shumaker to concurrent terms of 5 years in prison, to run concurrently with his sentence in Case No. 2012-CF-1230. (Doc. 19, Attach. 2, Ex. A at 165-76; Ex. B at 216-27 (judgment and sentence)).

affirmed on September 10, 2014, *per curiam* and without written opinion. *Shumaker v. State*, 149 So. 3d 7 (Fla. 1st DCA 2014) (Table) (copy at Doc. 19, Attach. 4, Ex. I).[5]

On January 21, 2015, Shumaker filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel. (Doc. 19, Attach. 4, Ex. J). The First DCA denied the petition on the merits on February 17, 2015. *Shumaker v. State*, 157 So. 3d 530 (Fla. 1st DCA 2015) (copy at Doc. 19, Attach. 4, Ex. K).

On December 2, 2015, Shumaker filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 19, Attachs. 4-5, Ex. L at 1-75). On March 14, 2016, the state circuit court struck the motion with leave to file an amended motion within 60 days. (Doc. 19, Attach. 5, Ex. L at 76-77). Shumaker filed an amended motion on May 20, 2016. (Doc. 19, Attach. 5, Ex. L at 82-122). On August 23, 2016, the circuit court entered a final order denying the amended Rule 3.850 motion as untimely. (Doc. 22, Attach. 5, Ex. L at 123-28). The First DCA affirmed *per curiam* without written opinion. *Shumaker v. State*, 226 So. 3d 822 (Fla. 1st DCA 2017) (Table) (copy at Doc. 19, Attach. 5, Ex. M). The

_____

[5] The state circuit court's docket sheet reflects that while Shumaker's direct appeal was pending, Shumaker filed a "Pro Se Motion to Vacate Sentence/Newly Discovered Evidence" on March 19, 2014, which was dismissed without prejudice on July 29, 2014. (Doc. 19, Attach. 4, Ex. L at 9 of docket sheet, lines 269, 279).

mandate issued July 17, 2017. (Doc. 19, Attach. 5, Ex. O). Shumaker sought discretionary review in the Supreme Court of Florida. (Doc. 19, Attach. 5, Ex. P). The Florida Supreme Court dismissed the petition for lack of jurisdiction on August 2, 2017. *Shumaker v. State*, No. SC17-1422, 2017 WL 3275889, at *1 (Fla. Aug. 2, 2017) (copy at Doc. 19, Attach. 5, Ex. Q).

Shumaker filed his *pro se* federal habeas petition on August 4, 2017, raising twelve claims (Doc. 1). The State asserts that Shumaker is not entitled to habeas relief because his claims are procedurally defaulted, devoid of merit, or both. (Doc. 19). Shumaker replied. (Doc. 30).

## II.   Governing Legal Principles

### A.   Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)).

A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998)

(holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented to the state court, but was rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). In the second instance, the federal court must determine whether the state's procedural default ruling rested on an adequate state ground independent of the federal question. *See Harris v. Reed*, 489 U.S. 255 (1989).

This Circuit has a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on a state procedural rule to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate.

*Id.* The adequacy requirement has been interpreted to mean the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id*.

### B.    Section 2254 Standard of Review

A federal court "shall not" grant habeas relief to a state prisoner on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] In *Williams*, Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[6] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication of the federal claim is contrary to the clearly established Supreme Court case law. The adjudication is "contrary to" federal law only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244). It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents. It goes no
> further. Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal. *Jackson v.
> Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court*, a state prisoner must
> show that the state court's ruling on the claim being presented in
> federal court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement*.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of the

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See

Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or

laws and treaties of the United States."  28 U.S.C. § 2254(a).

**C.   Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)

("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances.") (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The *Strickland* standard also applies to a claim of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted). Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success on appeal. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, petitioner would have prevailed on appeal. *See Robbins*, 528 U.S. at 285. Moreover, the arguments omitted from the appeal must have been sufficiently significant to have affected the outcome of the

appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." *Id.* at 1344 (internal quotation marks and citation omitted). Additionally, when an issue was not preserved for appellate review, appellate counsel's failure to raise the issue could not be constitutionally deficient because it was based on the reasonable conclusion that the appellate court would not address the unpreserved issue. *See Diaz v. Sec'y Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with

unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.   Discussion

**Ground One**       **"Appellate counsel rendered ineffective assistance by failing to raise fundamental trial court error where the trial court failed to conduct a proper competency hearing in violation of Petitioner's right to due process known as procedural *Pate* claim" (Doc. 1 at 5 in ECF)**

Shumaker claims that his appellate counsel, Attorney Victoria Wiggins, was ineffective when she failed to argue that the trial court committed fundamental error by failing to follow the procedure set forth in Rules 3.210-3.215 of the Florida Rules of Criminal Procedure, for determining whether he was competent. (Doc. 1 at 5 in ECF; *see also* Doc. 30 at 5-8). To support this claim, Shumaker asserts that during sentencing, the trial court had grounds to believe he was not competent to proceed. (Doc. 30 at 5-6). Shumaker explains that records available at sentencing showed he had "mental problems" and was adjudicated incompetent in a prior criminal proceeding, with no record showing that he was restored to competency. (*Id.*). Shumaker contends that "the proceedings should not have ensued without the necessary subsidiary facts first being put on the record to show the Defendant was rightfully restored to competency." (*Id.* at 7). Shumaker faults appellate counsel

Wiggins for failing to argue on direct appeal that the trial court's failure to hold a competency hearing prior to sentencing was fundamental error.

The parties agree that Shumaker presented this claim to the state courts. (Doc. 1 at 11 in ECF; Doc. 19 at 14-15). The State asserts that Shumaker is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 15-19).

### A.    Section § 2254 Review of State Court's Decision

The state court record confirms that Shumaker presented this ineffective assistance claim in his state habeas petition. (Doc. 19, Attach. 4, Ex. J at 11-12). The First DCA denied Shumaker's claim in a one sentence opinion: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." (Doc. 19, Attach. 4, Ex. K).

Where, as here, the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*. The *Richter* test provides: "Where a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent

with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying or convicting a defendant who is mentally incompetent. *See Pate v. Robinson*, 383 U.S. 375 (1966). The federal competency standard is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also Indiana v. Edwards*, 554 U.S. 164 (2008).

In *Drope*, the Supreme Court elaborated:

The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

420 U.S. at 180.

The Eleventh Circuit has applied and expounded on this standard. "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can

be equated with mental incompetence to stand trial." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted). A *Pate* analysis must focus on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency." *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987) (citations omitted). A petitioner who makes a substantive competency claim, contending that he was convicted while mentally incompetent, "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992). This standard is in contrast to a petitioner who makes a procedural competency claim alleging that the trial court failed to hold a competency hearing after his competency was put at issue. To prevail on a procedural competency claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." *James*, 957 F.2d at 1572 n.15 (citing *Fallada*, 819 F.2d at 1568). A petitioner who presents "clear and convincing evidence" which creates a "real, substantial and legitimate doubt" as to his competency is entitled to an evidentiary hearing on his substantive competency claim. *Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1573). However, the standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir.

1992) (quotations omitted). Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion. *See Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996).

The Florida Rules of Criminal Procedure provide:

> If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and may order the defendant to be examined by no more than 3 experts, as needed, prior to the date of the hearing.

Fla. R. Crim. P. 3.210(b). If the state court finds that the defendant is competent to proceed, the court must enter its order so finding. Fla. R. Crim. P. 3.212(b).

The Florida Rules also provide:

> When in any criminal case . . . counsel has reason to believe that the defendant may be incompetent to proceed . . . counsel may so inform the court who shall appoint 1 expert to examine the defendant in order to assist counsel in the preparation of the defense. The expert shall report only to the attorney for the defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege.

Fla. R. Crim. P. 3.216(a).

Here, the state court record establishes that on April 5, 2013, approximately four months before trial, Shumaker's trial counsel, Attorney Spiro Kypreos, filed a "Rule 3.216(a) Motion for Appointment of Expert to Assist Counsel." (Doc. 19, Attach. 1, Ex. A at 11-14). Attorney Kypreos requested that the court appoint an

expert to examine Shumaker's competency and provide a report exclusive to defense

counsel. Kypreos asserted the following grounds for the motion:

> Attached is a copy of a letter recently submitted by the defendant to the Court. In the letter the defendant repeatedly refers to his counsel as "Mr. Mike Papantonio." The defendant and counsel have conferred at length several times and the defendant should be well aware of counsel's correct name. The defendant was found incompetent to proceed in a 1991 case in this circuit. He was hospitalized and subsequently was determined to be competent. The defendant has a history of hearing voices and is suppose [sic] to be receiving medication to address that problem. He suggests in his letter that he is not receiving medications and is hearing voices. Counsel has reason to believe that the defendant is not competent to proceed.

(Doc. 19, Attach. 1, Ex. A at 11).

The letter attached to counsel's motion was actually written by a Henry

Lawler "on behalf of" Shumaker (but was co-signed by Shumaker), which could

explain why the letter misidentified defense counsel. (Doc. 19, Attach. 1, Ex. A at

13-14). The letter stated that Shumaker did not completely trust defense counsel.

The letter also recounted Shumaker's experience with another defense attorney in

1976 (37 years prior) in which Shumaker entered a plea based upon allegedly

misleading advice from counsel. The letter stated that Shumaker engaged in self-

harm behavior in 1967, 1971, and 1975. It reported that Shumaker was determined

incompetent to proceed in 1991 and had not had a formal competency proceeding

since then. The letter claimed that Shumaker's mental health counselor stated that

Shumaker had not received any psychiatric medication from December of 2011 to

June of 2012 (the underlying offense conduct occurred on February 12, 2012). The letter also explained that Shumaker's older brother, who "helped" Shumaker with his mental illness, died, and the "high level of mourning and duress" caused Shumaker to consume crack cocaine, powder cocaine, marijuana, and heroin on February 11-12, 2012. The letter identified Shumaker's then mental illness as "bi-polar, schizophrenia, hearing and seeing things that isn't really there, polysubstance abuse, and anti-social personality disorder." (Doc. 19, Attach. 1, Ex. A at 14). The letter stated that Shumaker asked defense counsel to "plea noncomposmentis [sic]" but counsel responded he was taking his family on vacation on March 26, 2012. (*Id*.).

The trial court appointed Dr. Kevin Groom to evaluate Shumaker's competency. (Doc. 19, Attach. 1, Ex. A at 15-17). The order directed Dr. Groom to report his determination to defense counsel and, if requested by defense counsel, to assist counsel in preparing for and testifying at a competency hearing. (*Id*.).

The state court record includes another letter to the court written by Shumaker on July 27, 2013, but not filed with the court until July 31, 2013, two days after trial had commenced (Shumaker's trial was held on July 29 and August 2, 2013). (Doc. 19, Attach. 1, Ex. A at 18-21). There is no indication that the letter was written by anyone but Shumaker. Shumaker complained that Attorney Kypreos was "biased" against him, because Kypreos believed Shumaker was guilty of the aggravated battery and encouraged Shumaker to plead guilty and serve a sentence of 15 years

of imprisonment. Shumaker stated that he had only one prior conviction for a "violent" crime. He stated that the victim (Lewis) admitted in his deposition that he came to Shumaker's apartment to fight. Shumaker also stated that the weapon described by Lewis (a box cutter) was never recovered, and that the report of Lewis's trip to the hospital did not indicate the presence of blood on his clothing. Shumaker complained that Attorney Kypreos failed to tell him that he took four other depositions and that Kypreos refused to provide Shumaker with a copy of discovery materials because Kypreos did not want Shumaker to know that the State's case was weak. Shumaker admitted, though, that he had reviewed discovery materials disclosed by the State.[7] Shumaker requested that the court conduct a *Nelson* hearing.[8] (Doc. 19, Attach. 1, Ex. A at 18-21).

The court held a *Nelson* hearing on August 2, 2013, the transcript of which was part of the record on direct appeal. (Doc. 19, Attach. 3, Ex. E). At the hearing, Shumaker asked the court to disregard the letter and stated he wished to proceed with Attorney Kypreos as his counsel.

---

[7] Shumaker stated that he saw his prison records in the discovery materials and believed the State's collection of them was "unethical." (Doc. 19, Attach. 1, Ex. A at 21).

[8] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973) (prescribing the procedure for addressing a criminal defendant's request to discharge counsel); *Hardwick v. State*, 521 So. 2d 1071, 1074-75 (Fla. 1988) (approving the *Nelson* procedure).

At the conclusion of Shumaker's jury trial, the court initially set sentencing for September 19, 2013. On that date, Attorney Kypreos advised the court that he spoke with Shumaker earlier that day and had a good faith basis to question Shumaker's competency to proceed to sentencing in Case No. 2012-CF-1230, and to proceed to trial in Case Nos. 2012-CF-4987 and 2012-CF-5597. (Doc. 19, Attach. 1, Ex. A at 108-18). Attorney Kypreos requested that the court again appoint Dr. Groom, pursuant to Rule 3.216(a), to evaluate Shumaker's competency and to report his determination to only defense counsel. (Doc. 19, Attach. 1, Ex. A at 108-18 (transcript of hearing), Ex. A at 130 (written motion). Attorney Kypreos stated the following as grounds for his request:

> He's not been found not competent before. I had Dr. Groom appointed to assist me in determining whether or not he was competent to proceed to trial originally. He did not file – we did not raise a competency issue[.] [A]s a result of Dr. Groom's assistance I determined that he was competent to proceed to trial. And then he went [to] trial and he was fine at trial. I could communicate with him very easily, but today I simply cannot communicate with him.

(Doc. 19, Attach. 1, Ex. A at 109). The State did not oppose a continuance of sentencing or a competency evaluation and the court granted Kypreos's request. (Doc. 19, Attach. 1, Ex. A at 116 (transcript of hearing), Ex. A at 131-33 (order appointing expert under Rule 3.126(a))).

At a hearing on November 14, 2013, Attorney Kypreos advised the court that he no longer harbored any concerns about Shumaker's competency:

MR. KYPREOS: . . . We got a confidential report. I've had the opportunity to talk to Mr. Shumaker and I do not have any concerns as to his competency to proceed.

THE COURT: So, at this time, you're not filing any notice of incompetence—

MR. KYPREOS: Exactly.

THE COURT: —or any motion for me to find him to be incompetent to proceed for sentencing purposes?

MR. KYPREOS: Right. We are not raising a competency issue.

THE COURT: All right. So, do we have sentencing— are we prepared for sentencing today—

MR. KYPREOS: Yes, sir.

THE COURT: —in case number 2012-1230?

MR. KYPREOS: Yes, sir.

THE COURT: What is our status on the other two cases?

MR. KYPREOS: We have a plea agreement on that, Your Honor.

(Doc. 19, Attach. 1, Ex. A at 137). Attorney Kypreos presented argument on the appropriate sentence. (Doc. 19, Attach. 1, Ex. A at 157-59). Kypreos urged the court not to impose the maximum sentence of 30 years in prison, arguing, among other things, that Shumaker had "a mental health history." (*Id*. at 157). Kypreos referenced Shumaker's earlier criminal case where he was "found incompetent to proceed . . .

"[a]nd then they brought him back and they determined that he was competent and he was sentenced accordingly." (*Id*. at 157).

The First DCA determined that Shumaker's appellate counsel was not ineffective for failing to argue fundamental error with respect to the trial court's failure to hold a competency hearing. Fairminded jurists could concur with this conclusion. The objective facts known to the trial court did not create a bona fide doubt about Shumaker's competence to proceed. Despite Attorney Kypreos's assertion at the scheduled sentencing on September 19, 2013, that Shumaker was unable to assist in his defense, Kypreos reported two months later, on November 14, 2013, that he had no concerns about Shumaker's competence after reviewing Dr. Groom's evaluation and personally speaking with Shumaker. Additionally, at the time of Shumaker's allocution immediately prior to sentencing in Case No. 2012-CF-1230, Shumaker provided a coherent explanation for the circumstances underlying his offense conduct, he apologized for his conduct, and he requested leniency. (Doc. 19, Attach. 1, Ex. A at 159-61).

The court imposed sentence in Case No. 2012-CF-1230 and then conducted a colloquy regarding the plea agreement in Case Nos. 2012-CF-4987 and 2012-5597. (Doc. 19, Attach. 2, Ex. B at 165-73). Shumaker's colloquy reflects that he was coherent, articulate, and understood the nature of the theft charges (i.e., that he stole a purse valued at $300-$5,000 from Dillard's on September 28, 2012; and he stole

Page 24 of 82

groceries valued under $300 from a Dollar General Store on November 6, 2011). The colloquy also reflects that Shumaker understood the consequences of pleading guilty to those charges and his potential sentence.

Shumaker argues that the fact that he was adjudicated incompetent in 1991 and allegedly never deemed competent thereafter created a bona fide doubt about his competency in 2013. However, according to a competency evaluation filed on February 25, 1992, in the Escambia County Circuit Court, Case Nos. 1991-CF-2075 and 1991-CF-2091, Dr. Anthony D. McCoy evaluated Shumaker's competency on February 14, 1992, and rendered the following conclusions and recommendations:

> Mr. Jesse Shumake [sic] appears to be an individual with a longstanding history of maladjustment. He appears to possess and antisocial personality disorder, and major mental illness. However, it should be noted that it is the opinion of this examiner that he is able to overexaggerate symptoms to be conveniently used at times. He has received treatment in the form of antipsychotic medication and appears to be stable at this time. Results of this competency evaluation indicate that he is competent to proceed to trial at the present time. It is recommended that the defendant be discharged from the Forensic Service of Florida State Hospital and returned to Escambia County. It is recommended that medical supervision continues while he is incarcerated, as he is receiving antipsychotic medication. It is not recommended that he be released on bail prior to his trial, he apparently has not faired [sic] well when released into society, and as [sic] has a fairly extensive history of drug usage. Release could compromise his trial competency. Because the defendant has a history of suicidal ideations and apparent attempt as reported by him, it is recommended that any voicing of suicidal intentions be seriously considered.

(Doc. 19, Attach. 6, Ex. R at 5). According to the Docket Sheet Report in Case No. 1991-CF-2075, which Shumaker himself submitted as an exhibit to his state habeas petition and his Rule 3.850 motion, the trial court found Shumaker competent on April 8, 1992. (Doc. 19, Attach 4, Ex. J; Doc. 19, Attach. 5, Ex. L at 53). The trial court accepted Shumaker's no contest plea to the burglary and grand theft charges in Case No. 1991-CF-2075, and sentenced Shumaker to concurrent split sentences of 5 years in prison followed by 2 years of probation. (Doc. 19, Attach 4, Ex. J; Doc. 19, Attach. 5, Ex. L at 53; Doc. 19, Attach. 6, Ex. S). This record refutes Shumaker's assertion that he was never deemed competent.

Shumaker also argues that it was apparent he had "mental issues." A history of mental illness, however, is not sufficient in itself to demonstrate incompetence. To establish incompetence, a petition must demonstrate that his mental illness generated substantial doubt as to his competence at the time in question. *See Medina*, 59 F.3d at 1106; *Card*, 981 F.2d at 484. Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence. *See Sheley v. Singletary*, 955 F.2d 1434, 1438-39 (11th Cir. 1992) ("Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial."). In order to establish incompetence, the evidence must show that the medication, in conjunction with the petitioner's mental illness, caused the petitioner to be unable to consult effectively with his attorney or understand the

proceedings. *See Sheley*, 955 F.2d at 1439; *Fallada*, 819 F.2d 1569; *Bolius v. Wainwright*, 597 F.2d 986, 990 (5th Cir. 1979); *see also Pardo v. Sec'y, Fla. Dept. of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009) (holding that, absent evidence of an inability to assist counsel, the defendant's "low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence").

Shumaker has failed to make the requisite demonstration of incompetence, and the record indicates that Shumaker was competent. For example, during the plea colloquy that occurred immediately after his sentence was pronounced in Case No. 2012-CF-1230, the trial court asked Shumaker if he was taking medication, and Shumaker responded he had taken his medication that morning. (Doc. 19, Attach. 2, Ex. B at 165-76). The court asked Shumaker if the medication made him dizzy, light-headed, or confused, and Shumaker responded that it did "from time to time." The court asked Shumaker how he felt then, and Shumaker responded that he felt "good" and confirmed that he felt "alert and clear-headed." (*Id.*). None of the information presented to the trial court suggested that Shumaker was unable to consult with defense counsel or understand his criminal proceedings. The First DCA did not unreasonably apply *Strickland* when it determined that appellate counsel was not ineffective for failing to argue that the trial court committed fundamental error by

failing to hold a competency hearing. Shumaker is not entitled to habeas relief on Ground One.

| | |
|---|---|
| **Ground Two** | **"Counsel rendered ineffective assistance of counselship [sic] in which counsel was fully aware that the alleged Defendant was not subject to the personal jurisdiction of the court, based on his incompetency which caused the court to enter and render a void judgment illegally, in violation of Defendant's 5th, 6th, and 14th Amendments [sic]." (Doc. 1 at 6 in ECF)** |
| **Ground Three** | **"Counsel was ineffective for not investigating whether the Defendant had been properly restored to competency in 1991 after being committed to a hospital for a civil commitment, rendering this conviction and all convictions after 1991 void!" (Doc. 1 at 8 in ECF)** |

Shumaker claims that Attorney Kypreos was ineffective for allowing the trial court to adjudicate him guilty and sentence him when Kypreos knew Shumaker was deemed incompetent in 1991, and there was no order indicating his competency was restored. (Doc. 1 at 5-6, 8 in ECF; *see also* Doc. 30 at 6). The parties agree that Shumaker presented these ineffective assistance claims to the state court in his initial and amended Rule 3.850 motions. (Doc. 1 at 7, 8-9, 11 in ECF; Doc. 19 at 20, 24).

The State asserts a procedural default defense. The States argues that the state court denied Shumaker's amended Rule 3.850 motion on the independent and adequate state law procedural ground that Shumaker failed to file his amended motion within the 60-day period prescribed by Fla. R. Crim. P. 3.850(e). (Doc. 19 at 20-27). The State argues that Shumaker cannot satisfy the "cause and prejudice"

standard because Attorney Kypreos had no reasonable basis to assert Shumaker was not restored to competency in the 1991 proceeding or was otherwise incompetent to proceed in the 2012 proceeding. (Doc. 19 at 20-27). Shumaker's reply does not address the procedural default argument. (Doc. 30).

### A.    Shumaker's Claims Are Procedurally Defaulted

The state court record confirms that Shumaker presented these ineffective assistance claims to the state circuit court as "Ground One" and "Ground One-B" of his original Rule 3.850 motion. (Doc. 19, Attach. 5, Ex. L at 2-10). The circuit court entered a nonfinal order striking the motion as facially insufficient with leave to file an amended motion within 60 days of service of the order. (Doc. 19, Attach. 5, Ex. L at 76-77). The clerk of court served Shumaker with a copy of the order on March 15, 2016. (Doc. 19, Attach. 5, Ex. L at 77). Shumaker sought an extension of time, but the circuit court denied his request in an order that was served on Shumaker on May 12, 2016. (Doc. 19, Attach. 5, Ex. L at 78-81). Shumaker filed an amended Rule 3.850 motion on May 20, 2016, which again presented these ineffective assistance claims. (Doc. 19, Attach. 5, Ex. L at 83-91). The state circuit court clearly and expressly rejected Shumaker's amended motion as untimely under Florida Rule of Criminal Procedure 3.850(e) and (f). (Doc. 19, Attach. 5, Ex. L at 123). The court noted that Shumaker's amended motion was filed three days after the 60-day deadline and that Shumaker failed to explain or even address his untimeliness. (*Id.*

at 123-24). The First DCA summarily affirmed without opinion. (Doc. 19, Attach. 5, Ex. M).

This court presumes that the First DCA's rejection of Shumaker's claims rested on the same procedural bar the lower court invoked. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. . . . [W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.") (citation omitted).

The state circuit court rejected Shumaker's claims as untimely under Fla. R. Crim. P. 3.850(e) and (f). Rule 3.850 provides, in relevant part:

> **(e) Amendments to Motion.** When the court has entered an order under subdivision (f)(2) or (f)(3), granting the defendant an opportunity to amend the motion, any amendment to the motion must be served within 60 days.
>
> . . . .
>
> **(f) Procedure; Evidentiary Hearing; Disposition**. On filing of a motion under this rule, the clerk shall forward the motion and file to the court. Disposition of the motion shall be in accordance with the following procedures, which are intended to result in a single, final, appealable order that disposes of all claims raised in the motion.
>
> . . . .

(2) *Timely but Insufficient Motions.* If the motion is insufficient on its face, and the motion is timely filed under this rule, the court shall enter a nonfinal, nonappealable order allowing the defendant 60 days to amend the motion. If the amended motion is still insufficient or if the defendant fails to file an amended motion within the time allowed for such amendment, the court, in its discretion, may permit the defendant an additional opportunity to amend the motion or may enter a final, appealable order summarily denying the motion with prejudice.

Fla. R. Crim. P. 3.850(e), (f) (2015).

This state procedural rule is adequate to support the state court's judgment. The circuit court cited as supporting authority *Ivory v. State*, 159 So. 3d 197, 198 (Fla. 4th DCA), *review denied*, 177 So. 3d 1267 (Fla. 2015) (Table), which rejected a defendant's amended Rule 3.850 motion as untimely under similar circumstances.

The defendant in *Ivory* filed a Rule 3.850 motion, which the circuit court dismissed as facially insufficient with leave to amend within 60 days. *Id*. at 198. Ivory failed to file an amended motion within the 60-day window, and instead filed it 161 days after the court's order. *Id*. at 198. The circuit court summarily denied the amended motion with prejudice, explaining that it was not filed within the 60-day amendment period. The Fourth DCA affirmed. The court began by explaining the 2013 amendments to Rule 3.850, and the consequences of those amendments:

The recent amendments to postconviction relief procedures address the situation presented here. *See In re Amendments to the Fla. Rules of Criminal Procedure & the Fla. Rules of Appellate Procedure*, 132 So. 3d 734, 738 (Fla. 2013) (effective July 1, 2013). The amended rule provides:

> **(e) Amendments to Motion.** *When the court has entered an order under subdivision (f)(2) or (f)(3), granting the defendant an opportunity to amend the motion, any amendment to the motion must be served within 60 days.* A motion may otherwise be amended at any time prior to either the entry of an order disposing of the motion or the entry of an order pursuant to subdivision (f)(5) or directing that an answer to the motion be filed pursuant to (f)(6), whichever occurs first. Leave of court is required for the filing of an amendment after the entry of an order pursuant to subdivision (f)(5) or (f)(6). Notwithstanding the timeliness of an amendment, the court need not consider new factual assertions contained in an amendment unless the amendment is under oath. New claims for relief contained in an amendment need not be considered by the court unless the amendment is filed within the time frame specified in subdivision (b).

Fla. R. Crim. P. 3.850(e) (emphasis added). The rule unambiguously requires that any amendment be served within 60 days in this situation. *Ivory*, 159 So. 3d at 198-99. The Fourth DCA determined that it was within the circuit court's discretion to deny the amended motion with prejudice as untimely. *Id*. at 198.

The Fourth DCA rejected Ivory's argument: that he could file an amended motion any time prior to the expiration of Florida's two-year deadline set forth in Rule 3.850(b), as long as the court had not entered a ruling on the merits of his motion. *Id*. at 199. The court emphasized that Ivory's argument relied on caselaw *pre-dating* the 2013 amendments to Rule 3.850. The court concluded:

> Appellant's argument is contrary to the plain language of the rule. The caselaw he relies upon has been overruled by the procedures in the amended rule which now govern the specific situation presented here.

Appellant did not seek an extension of the 60-day time limit nor has he argued any circumstances that prevented him from timely complying with the trial court's order. The trial court did not abuse its discretion in denying the motion with prejudice in these circumstances.

*Id.* at 199.

The state court here did not apply the state procedural bar in an arbitrary or unprecedented fashion. Shumaker filed his amended Rule 3.850 motion beyond the 60-day period, and failed to address or explain his tardiness. (Doc. 19, Attach. 5, Ex. L at 123-24). The state court's recognition of Rule 3.850's independent and adequate state procedural bar precludes federal habeas review of Grounds Two and Three.[9]

**Ground Four**          **"Counsel was ineffective for eliciting exculpatory statements made by Defendant to Investigator Parsons which allowed the State to introduce Defendant's prior convictions in violation of U.S. Const. Amends. V, VI, due process and effective assistance of counsel." (Doc. 1 at 10 in ECF)**

Shumaker claims that Attorney Kypreos was ineffective for eliciting his exculpatory statements from Investigator Parsons during cross-examination, which

---

[9] Shumaker makes none of the requisite showings to excuse his procedural default. Although Shumaker relies on *Martinez v. Ryan*, 566 U.S. 1 (2012) as cause to excuse his procedural default of Grounds Five through Nine, Eleven and Twelve (*see* Doc. 1 at 12 in ECF), Shumaker does not allege cause for his failure to timely file his amended Rule 3.850 motion in the state circuit court with respect to Grounds Two and Three of his § 2254 petition. Shumaker maintains that he properly exhausted Grounds Two and Three. (*See* Doc. 1 at 11 in ECF). Even if Shumaker raised a *Martinez* argument, it would fail because his claims in Grounds Two and Three are not "substantial" for the reasons discussed above in Ground One.

in turn "opened the door" to the State introducing the fact that Shumaker had 25 prior convictions (24 felonies and one misdemeanor crime of dishonesty). (Doc. 1 at 10 in ECF; Doc. 30 at 1-4). The parties agree that Shumaker presented this claim to the state courts on direct appeal of his conviction, and that the state court denied relief on the merits. (Doc. 1 at 10-11 in ECF; Doc. 19 at 27-31). The State asserts that Shumaker is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard.

### A.    Section 2254 Review of State Court's Decision

The record confirms that Shumaker presented this claim in his direct appeal. (Doc. 19, Attach. 3, Ex. F). The First DCA affirmed Shumaker's conviction without explanation. (Doc. 19, Attach 4, Ex. I).

As previously discussed, where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See Richter*, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Richter*, 562 U.S. at 102.

The First DCA's decision could have been based on the theory that Shumaker failed to carry his burden of establishing that Kypreos's performance was deficient under *Strickland*. As discussed previously, trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To overcome that presumption, Shumaker must show that Kypreos "failed to act reasonably considering all the circumstances." *Pinholster*, 563 U.S. at 189.

If the record is not complete regarding counsel's actions, "then the courts should presume that what the particular defense lawyer did at trial . . . were acts that some lawyer might do." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1314-15 n.15 (11th Cir. 2000)). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

The trial transcript provides the factual background for this claim. The prosecutor elicited the following testimony from Investigator Parsons during direct examination:

> Q. And at what point in your investigation did you ask that a photo lineup be generated?

A.  After I was contacted by telephone from someone identifying himself as Jessie Shumaker.

Q.  Okay. How is it that this telephone call ended up happening?

A.  I had left a – when I attempted to make contact at room 10, [of the Town and Country Inn] I left a business card requesting to be contacted by the resident with my telephone number on it.

Q.  Okay. And so this person called you?

A.  That's correct.

Q.  All right. Now, did this person indicate that they knew Edward Lewis?

A.  Yes.

Q.  And how did they – well, did they indicate that they knew Lori Dixon?

A.  How did they know Lori Dixon?

MR. KYPREOS:  Objection, Your Honor. I believe the best evidence will be the recording of the conversation.

THE COURT:  Would y'all step up here for just a moment.

    (At the bench:

    . . . .

MR. KYPREOS:  Judge, if I can sort of make one point? They're going to put in the defendant's statements. In the defendant's statement he acknowledges that he called Mr. Parson. And so I think, you know, whether they hear one statement first or the other doesn't bother me. What I'm concerned about at this point is, the officer – if she's going to go through the officer what was said in the phone conversation, then let's put the phone conversation in. I don't think we need repetition.

MS. SHEA [Prosecutor]:  I don't intend to put the phone conversation in.

MR. KYPREOS:  You don't?

THE COURT:  Well, you mean, you don't intend to put in a recording of it?

MS. SHEA:  Correct.

THE COURT:  Do you intend to have him say what was said during the phone conversation?

MS. SHEA:  Yes, sir.

MR. KYPREOS:  Well, then I object to that because I think the recording –

THE COURT:  Okay.  Well, what is the objection then?

MR. KYPREOS:  Best evidence. The recording itself is the best evidence of what he was told.

THE COURT:  That doesn't mean that his testimony— that's not what the best evidence rule requires. A statement may be recorded and the evidence of what was said in the statement still may be offered through the person to whom it was said.  So, if you wanted to offer the recording in evidence yourself to show that he doesn't tell it accurately, you may do that.

MR. KYPREOS:  Okay. . . . I have no objection to the recording coming in; I do have an objection if he's now going to –

THE COURT:  Let me stop just a second. The recording that you were going to play, was that done over the telephone or was that done in person?

MS. SHEA:  There's two, one of each.

THE COURT:  Okay. And you are going to play each of them also?

MS. SHEA:  No, sir.

THE COURT:  Okay. You're just going to play the recording of the face-to-face interview.

MS. SHEA:  No, sir.

THE COURT:  The recording of the telephone interview?

MS. SHEA:  No, sir.

THE COURT:  No?

MR. KYPREOS:  You're not going to play either recording?

MS. SHEA:  I don't intend to play either recording.

MR. KYPREOS:  Oh, okay.

THE COURT:  All right. I'll overrule the objection.

MR. KYPREOS:  Okay.

    (Bench conference concluded)

    . . . .

Q [Prosecutor]:  Okay. And how did he say he knew Edward Lewis?

A:  That Mr. Lewis was the father of one of Ms. Dixon's children.

    . . . .

Q: At the start of your interview, or not your interview, but your telephone conversation with Mr. Shumaker, how would you describe his demeanor?

A:  Pleasant. It was a very— it started off as a very casual conversation.

Q:  Okay. And as it progressed, did his demeanor change in any way?

A:  The inflection of his words changed. He also became a bit agitated.

Q:  Okay. Did he ever admit seeing or having any contact with Edward Lewis?

A:  Yes, he did.

Q:  Did he tell you how many times?

A:  There wasn't a number, but he referred to as throughout the day.

Q:  Okay. And did he indicate to you when this happened?

A:  As far as the date or time?

Q:  The date, I'm sorry. Did he indicate what day or the time frame this happened?

A:   I think we spoke and understood what day it was. We didn't specifically refer to the day.

Q:  Okay. Did he discuss with you having any kind of confrontation?

A:  I asked him if he had a confrontation with Mr. Lewis, to which he said yes.

Q:  Okay. And how did he describe the confrontation to you?

A:  His description of the confrontation was that he had been followed by Mr. Lewis, who was cussing at him, to which he ignored and left it alone.

(Doc. 19, Attach. 3, Ex. D at 238-43).

On cross-examination, Attorney Kypreos tried to clarify what Investigator Parsons meant by "confrontation:"

Q [Attorney Kypreos]:  He said there was a confrontation, not an altercation?

A:  That's correct.

Q:  Correct?

In other words, Mr. Shumaker didn't tell you that they had a fight?

A:  That's correct.

Q:  He told you that, essentially, Lewis was stalking him, following him around trying to get a card from him?

A:  Yes.

Q:  And he didn't want anything to do with Mr. Lewis?

A:  Yes, sir.

Q:  And he said there was never even any kind of physical contact?

A:  That's correct.

Q:  And he denied, of course, that there was any kind of cutting involved?

A:  Yes, sir.

Q:  And when you say he got agitated, when he started talking about Mr. Lewis, he started getting a little agitated, did he not?

A:  That's correct.

. . . .

Q: Right. And he was making it very clear to you that the source of his agitation is he felt he was being falsely accused?

A: I understood that was part of it, the rest of it as he described his relationship with Mr. Lewis and the confrontation he referred to, you could tell he was agitated just about being followed and harassed by Mr. Lewis, yes.

(Doc. 19, Attach. 3, Ex. D at 243-45).

The prosecutor requested a bench conference where she announced her intent

to introduce evidence of Shumaker's prior convictions:

MS. SHEA [Prosecutor]:    Judge, during cross-examination of Investigator Parsons, Mr. Kypreos brought out a number of statements, a denial by the defendant. And I submit that those are self-serving hearsay statements and, as a result –

THE COURT:  Actually, they're not because he was entitled to bring out other things that were said during the statement. If you had not called the witness to the witness stand and Mr. Kypreos had tried to call him up and present those, then it would have been. But so where were you going next?

MS. SHEA:  I'd like to introduce the evidence of the defendant's prior convictions.

THE COURT:  Well, that's where I just begun to think that you might be where you were going [sic].

MR. KYPREOS:  I'm sorry. What?

THE COURT:  She wants to offer the evidence of Mr. Shumaker's prior convictions.

MR. KYPREOS:  On what grounds?

. . . .

MS. SHEA:  Impeachment.

THE COURT:  – when the State – when the State offers a statement of a defendant, if the defendant asks for or presents other parts of the statement, particularly the exculpatory part of the statement made by the defendant, the cases have held that the State is then entitled to impeach essentially, impeach the defendant through the offer of evidence of his prior criminal convictions.

MR. KYPREOS:  Well, essentially –

THE COURT:  Either for felonies or for misdemeanor crimes of dishonesty.

MR. KYPREOS:  I'm willing to –

THE COURT:  You didn't have to go into it.

MR. KYPREOS:  No, I did have to go into it.

THE COURT:  No, you didn't. It was a choice.

MR. KYPREOS:  Judge, may I finish?

THE COURT:  You chose to offer additional statements that he had made that were arguably exculpatory statements, and the law is that when you choose to do that, in other words, it's a part of the rule of completeness, if you will. She didn't object, but if she had, I would have said you were entitled to bring it out as part of the rule of completeness. And I am aware that the cases have held that when that is done, then the State is entitled to, essentially, impeach the maker of the statement, being the defendant, by offering testimony of his felony convictions or misdemeanor convictions.

MR. KYPREOS:  Your Honor, may I say something for the record and make a record on this issue?

. . . .

She had raised the . . . subject of his being agitated, how his inflection had changed, and I was trying to get the context in which he was being agitated, that he was responding to Mr. Lewis's accusations and that he was –

THE COURT:  Exactly. But you asked the witness. . . if Mr. Shumaker had said that there was never any physical confrontation and –

MS. SHEA:  I might add that my question too, arguably, goes to being inconsistent with what the victim testified to in that the defendant was pursuing him and he was frustrated and agitated.

THE COURT:   So here's the question. Then how many felony convictions do you believe there are and how many misdemeanor crimes of dishonesty do you believe there are?

MS. SHEA:  I have judgments and sentences in court for 24 felonies and one misdemeanor.

(Doc. 19, Attach. 3, Ex. D at 246-48).

The court reserved ruling on the issue until after the State's next witness

testified. The court then revisited the issue during a recess:

THE COURT:  Okay. So the issue is whether or not the State will be permitted to offer evidence that Mr. Shumaker has had prior felony convictions or prior convictions of misdemeanors for crimes of dishonesty. The State has argued that during the cross-examination of the witness –

. . . .

that the Defense elicited exculpatory statements made by Mr. Shumaker and that the State is entitled to impeach the hearsay declarant because now the [ ] statement of a person offered in Court to prove the truth of

the matter asserted is hearsay. The State may offer statements of a defendant as an exception to hearsay. It doesn't mean a defendant's statements are not hearsay. A defendant's statements are hearsay, but the [State] may offer statements of a defendant as an exception to hearsay. When that is done, then the defendant is entitled, as part of a rule of completeness, if the defendant chooses to offer other statements that were made during that same . . . conversation.

And so, Mr. Kypreos, it appears to me that you did elicit exculpatory statements of Mr. Shumaker through . . . Officer Parsons, particularly Mr. Shumaker's statements that he had been followed by Mr. Lewis, who was cussing at him, that Mr. Shumaker said he didn't want anything to do with Mr. Lewis, and that Mr. Shumaker said there was no physical confrontation between he and Mr. Lewis.

. . . .

So, Mr. Kypreos, tell me why the State is not entitled to offer evidence of the convictions.

MR. KYPREOS: Well, Your Honor, essentially, we believe, as I was saying before at the bench, they raised they characterize it as a confrontation. It seemed to me that I had to make it clear there was no altercation and, in fact, what the defendant had described as being his . . . position as to what had occurred. The real purpose is to show that he was not silently admitting what had occurred, so . . .

THE COURT: I don't recall anything from the State's direct examination of Parsons by which the State elicited testimony from Parsons that Shumaker had said that he had . . . any physical contact.

MR. KYPREOS: No, I'm not saying he said that, I'm saying that he said that there was a confrontation, and I felt I had made clear that the word confrontation could include a physical altercation. And it seemed to me that I had to clarify that confrontation did not include an altercation, that, in fact, the defendant had told him that it was not an altercation. So it really wasn't even so much to offer for the truth of the matter asserted as it was to point out what, in fact, correctly the

Page 44 of 82

defendant had stated and to clarify that vague term "confrontation" which the State had elicited from the witness.

(Doc. 19, Attach. 3, Ex. D at 260-64).

At the court's request, the court reporter read back a portion of Investigator Parsons's testimony. (Doc. 19, Attach. 3, Ex. D at 265). The discussion continued:

MR. KYPREOS:  [I]n the cases cited by the State, it was the defendant who initiated the so called self-serving statements, not the State. I was in the quandary of here's the State giving their version of what the defendant said, here's the State using the vague term confrontation, and all I did on cross was clarify and give the context in which the defendant made that statement.

THE COURT:  I'm saying when you say all I did was this, but you did it. The State asked, you know, did he – did you ask him if there was a confrontation, Parsons said yes, he said there was.  And then the State asked how did he describe it, and then Parsons said he described it as Mr. Lewis following him and cussing at him and that he didn't want to have anything to do with him.

MR. KYPREOS:  Right.

THE COURT:  And he walked away.

MR. KYPREOS:  Right.

THE COURT:  Okay. You made the choice, okay, to bring out through your cross-examination some exculpatory statements that Mr. – Mr. Shumaker made.

. . . .

My decision is you . . . succeeded in introducing exculpatory statements made to the police, and they're hearsay statements. And under . . . 90.806, the rule is that when a hearsay statement has been

admitted in evidence, credibility of the declarant may be attacked. So the State is entitled to do it if the State chooses to.

(Doc. 19, Attach. 3, Ex. D at 266-67, 273). After consultation with Shumaker, Attorney Kypreos stipulated that Shumaker had 24 prior felony convictions and one misdemeanor conviction for a crime of dishonesty. (Doc. 19, Attach. 3, Ex. D at 278-81).

When the jury returned, the court announced the following:

Ladies and gentlemen of the jury, you have heard all of the testimony that you're going to hear. There is one more item of evidence that is going to be presented to you by a stipulation. Before I read that stipulation or announce that stipulation, though, I'm going to give you an instruction about the evidence that you are about to receive, and it is what we call a limiting instruction.

The evidence that you are about to receive that Jessie Lee Shumaker has been convicted of criminal offenses should be considered by you only in weighing the credibility of Jessie Lee Shumaker's statement to the police officers and not for any other purpose. The State and the Defense stipulate that Jessie Lee Shumaker has been convicted of 24 felony offenses and of one misdemeanor crime of dishonesty.

(Doc. 19, Attach. 3, Ex. D at 300).

It is apparent from the trial transcript that Attorney Kypreos, and even the trial court, anticipated that the prosecutor would play the recording of the telephone conversation between Shumaker and Investigator Parsons, and the jury would hear Shumaker's statements that (1) Lewis was following him around attempting to get something from him; (2) he (Shumaker) did not want anything to do with Lewis; (3)

there was never any physical contact between Lewis and Shumaker; and (4) Shumaker did not cut anyone.[10] But when the prosecutor announced during the bench conference that she was not introducing the recording, Kypreos had to rethink his strategy. Kypreos knew that Shumaker did not intend to testify (*see* Doc. 19, Attach. 3, Ex. D at 282-83), so he attempted to tell the jury Shumaker's side of the story by eliciting more details from Investigator Parsons about Shumaker's description of the confrontation and the source of Shumaker's agitation with Lewis. The manner in which Kypreos elicited Shumaker's exculpatory statements— through Parsons's testimony—opened the door to the prosecutor impeaching Shumaker's statements with his prior convictions.

Some fairminded jurists would argue that Kypreos's strategy was reasonable because it allowed the jury to hear Shumaker's side of the story without affording the prosecutor an opportunity to cross-examine Shumaker—even if Shumaker's version ultimately was not believed due to his prior convictions. Others could argue that Kypreos made a mistake. But even accepting the latter conclusion, the Sixth

---

[10] On the day of jury selection, the parties advised the trial court of their stipulation that the State would redact certain portions of the audio recording (Doc. 19, Attach 2, Ex. C at 8-12). During opening statements, Attorney Kypreos referenced the recorded telephone conversation and Parsons's recorded interview with Shumaker. (Doc. 19, Attach. 3, Ex. C at 168-70, 172).

Amendment does not entitle a defendant to perfect, error-free representation. *See Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989).

Counsel's performance is deficient only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690). Fairminded jurists could disagree whether Kypreos's performance crossed the line from reasonable to incompetent. This room for disagreement precludes a federal court from granting habeas relief. *See Richter*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); *id.* (emphasizing that § 2254(d) preserves the federal court's authority to issue the writ in cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents"); *see also Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied."); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1127 (11th Cir. 2012) (holding that if, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of Supreme Court precedent was not unreasonable, and AEDPA precludes the grant of habeas relief).

Another theory that could have supported the First DCA's decision is that Shumaker failed to show *Strickland* prejudice. The trial court limited the jury's consideration of Shumaker's prior convictions to the narrow issue of *whether his statements to law enforcement were credible*. The jury is presumed to have followed this instruction. *Kansas v. Carr*, 577 U.S. ___, 136 S. Ct. 633, 645 (2016) ("We presume the jury followed these instructions . . . ."); *United States v. Olano*, 507 U.S. 725, 740 (1993) (noting that courts presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them"); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). Given all of the circumstances, including the limiting instruction, the First DCA reasonably could have concluded that Shumaker failed to carry his substantial burden of demonstrating a reasonable probability that counsel's alleged error affected the jury's verdict. Looking through the AEDPA lens, fairminded jurists could agree with the First DCA's decision. Shumaker is not entitled to habeas relief on Ground Four.

**Ground Five**    "**Trial counsel was ineffective when he failed to request Fla. Jury Instruction 3.6(c) Insanity-Psychotropic Medication, Fla. R. Crim. P. 3.215 (2012), in violation of well-established Federal Criminal Rule 30 and Due Process, Effective Assistance of Counsel, U.S. Const. Amends V, VI" (Doc. 1 at 15 in ECF)**

The foregoing statement is the entirety of Shumaker's claim. Shumaker alleges no facts supporting this claim. (Doc. 1 at 15 in ECF). Shumaker admits that he did not present this claim to the state courts. (*Id.* at 12 in ECF). Shumaker cites *Martinez v. Ryan*, 566 U.S. 1 (2012), and explains that he did not have counsel during his Rule 3.850 proceeding. (*Id.* at 12 in ECF).

The State agrees with Shumaker that this claim is unexhausted and procedurally defaulted. The State contends, however, that Shumaker cannot obtain federal review through the "cause and prejudice" exception because his claim is without merit. (Doc. 19 at 31-33).

## A.    Shumaker's Claim Is Legally Insufficient on Its Face

Rule 2 of the Rules Governing Section 2254 Cases mandates "fact pleading" as opposed to "notice pleading." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011); *see also Mayle v. Felix*, 545 U.S. 644, 655 (2005) (explaining that § 2254 Rule 2(c) is more demanding than Fed. R. Civ. P. 8(a)). Rule 4 of the Rules Governing Section 2254 Cases puts the petitioner on notice of what likely will happen if his petition

fails to comply with the fact pleading requirements of Rule 2(c). Habeas Rule 4 provides, in relevant part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

28 U.S.C. § 2254 Rule 4. "Federal courts are authorized to dismiss summarily any habeas petition [or claim] that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing Habeas Rule 4).

Shumaker's generalized allegation that counsel was ineffective for failing to request the jury instruction on psychotropic medication, without any further facts concerning the applicability of the instruction, its purpose, or the effect of his counsel not requesting it, does not satisfy Rule 2(c)'s requirement. The mere fact that counsel did not request the instruction does not establish deficient performance or prejudice under *Strickland*.

This court is mindful that *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. However, the burden of properly identifying a claim and alleging supporting facts remains with the petitioner. *See, e.g.*, *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (holding that a habeas petitioner's allegations "must be factual and specific, not conclusory," and that "[c]onclusory allegations are simply not enough"). This court is not required to

pore through the record in search of facts that arguably might support Shumaker's claim.

As the court explained in *Chavez*, all of the principles of law governing pleading requirements, the burden of proof and the granting of evidentiary hearings in federal habeas cases "would mean nothing if district courts were required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition." *Chavez*, 647 F.3d at 1061. "Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Id*. "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record." *Id*.

This court may summarily deny relief on this claim because it is legally insufficient on its face. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1265, 1269 (11th Cir. 2014) (rejecting petitioner's ineffective assistance of counsel claim as legally insufficient on its face, where petitioner did not plead any facts to support relief and, thus, did not establish that counsel's conduct fell below *Strickland's* standard).

### B.    Shumaker's Claim is Procedurally Defaulted

An additional basis for rejecting this claim is that it is procedurally defaulted. Shumaker admits that he never presented it to the state courts. Shumaker's unexhausted claim is now procedurally barred as untimely under Florida rules of procedure, because it has been more than two years since his conviction and sentence became final. *See* Fla. R. Crim. P. 3.850(b). Shumaker's claim is also barred under Florida's prohibition on successive Rule 3.850 motions, because it was not asserted in his prior Rule 3.850 proceeding. *See* Fla. R. Crim. P. 3.850(h). Shumaker relies on *Martinez, supra*, to excuse his procedural default.

#### 1.    The *Martinez* Exception

As previously discussed, a federal court may consider the merits of a procedurally defaulted claim only if the petitioner establishes both "cause" for the default and "prejudice" from the alleged violation of his constitutional right. *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). To establish cause, a petitioner must "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Prior to *Martinez*, habeas petitioners were barred from establishing cause by relying on errors made by their state postconviction counsel. *See Coleman*, 501 U.S. at 752-53. In *Martinez*, however, the Supreme Court created a limited, equitable

exception to *Coleman* where: (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland*" (or the prisoner did not have postconviction counsel at all); and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez*, 566 U.S. at 14 (citations omitted).

To satisfy *Martinez*'s third prong, the petitioner "must demonstrate that the claim has some merit." *Id.* (citing *Miller-El, supra*, which described the standard for issuance of a certificate of appealability). The Eleventh Circuit construes the Supreme Court's citation to *Miller-El* "to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires 'a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2)." *Hittson*, 759 F.3d at 1269. A petitioner satisfies the COA standard "by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. The Eleventh Circuit elaborated on the "substantial claim" standard as follows:

> We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that

point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . [the] § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson*, 759 F.3d at 1270.

## 2.   Shumaker Fails to Satisfy *Martinez*'s Third Prong

Shumaker fails to demonstrate that his ineffective assistance claim is "substantial" and has "some merit." *Martinez*, 566 U.S. at 14. A claim that is legally insufficient on its face is not "substantial." *See Hittson*, 759 F.3d at 1270.

Even giving Shumaker the benefit of reviewing the state court record for a factual basis for this claim, Shumaker still falls short. Rule 3.215(c)(2) of the Florida Rules of Criminal Procedure and Florida Standard Jury Instructions 2.1(d) and 3.6(c) provide that defense counsel may request the following explanatory instruction, as both a preliminary instruction and a final instruction, if the defendant proceeds to trial with the aid of psychotropic medication:

(Defendant) currently is being administered psychotropic medication under medical supervision for a mental or emotional condition. Psychotropic medication is any drug or compound affecting the mind or behavior, intellectual functions, perception, moods, or emotion and includes anti-psychotic, anti-depressant, anti-manic, and anti-anxiety drugs. You shall not allow the defendant's present condition in court or

any apparent side effect from the medication that you may observe in court to affect your deliberations.

Fla. Standard Jury Instructions in Criminal Cases, 2.1(d), 3.6(c) Psychotropic Medication; *see also* Fla. R. Crim. P. 3.215(c)(2).

Although there is evidence in the record that Shumaker was taking psychotropic medication at the time of sentencing (three months after trial), there is no evidence he was taking it at the time of trial. Even assuming he *was* taking psychotropic medication during trial and therefore qualified for the instruction, Shumaker has not alleged any facts warranting a finding of prejudice. Shumaker does not allege, for example, that his mental condition or medication produced an effect that was observable to the jury during trial. Nor does an observable effect appear from the trial transcript. Nowhere in Shumaker's generalized claim does he allege any facts that would allow a court to find "that there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because Shumaker has not alleged facts to warrant a finding of *Strickland* prejudice, his claim is not "substantial." *Hittson*, 759 F.3d at 1265 (holding that habeas petitioner failed to satisfy *Martinez*'s standard for excusing his procedural default, because he did not allege any facts to warrant a finding of *Strickland*

prejudice). Shumaker fails to make the requisite showing to excuse his procedural default. Shumaker's procedural default bars federal habeas review of Ground Five.

<table>
<tr><td><strong><u>Ground Six</u></strong></td><td><strong><u>"The postconviction court of Escambia County, Fla. and the First DCA of Fla. erred when they failed to apply the appropriate liberal construction to Petitioner's pro se Fla. R. 3.850 motions and filings in violation of well-established Federal law—<em>Haines v. Kerner</em>, 404 U.S. 519, 520 (1972), Tit. 28 U.S.C. 2254(d)(1)(2), and the decisions by the state courts were decided in an inconsistent/manifestly unfair manner in violation of U.S. Const. Amends. V Due Process XIV. Plus, the state court's proceedings were not full and fair in violation of <em>Keeney v. Tamayo-Reyes</em>, 112 S. Ct. 1715 (1992)" (Doc. 1 at 15 in ECF)</u></strong></td></tr>
</table>

The foregoing statement is the entirety of Shumaker's claim. Shumaker alleges no fact to support the claim. (Doc. 1 at 15 in ECF). Shumaker states that he did not present this claim to the state courts, and explains that he did not have counsel during his Rule 3.850 proceeding. (Doc. 1 at 12 in ECF (citing *Martinez v. Ryan*, 566 U.S. 1 (2012))). The State agrees that this claim is unexhausted and procedurally defaulted. The State contends that Shumaker cannot obtain federal review through the "cause and prejudice" exception, because his argument is without merit. (Doc. 19 at 31-37).

## A.    Shumaker's Claim is Not Cognizable on Federal Habeas Review

This court need not decide the procedural default issue, because Shumaker fails to state a claim on which federal habeas relief may be granted. Shumaker

challenges the process afforded him in his state postconviction proceeding. A prisoner's challenge to the process afforded in state postconviction proceedings is not a cognizable claim for federal habeas relief because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla*., 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to state postconviction proceeding—the state court's ruling that petitioner waived his state collateral proceedings—was not cognizable on federal habeas review). The Eleventh Circuit explained in *Alston*:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, – U.S. –, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id.* at 1325-26; *see also, e.g., Carroll*, 574 F.3d at 1365-66 (holding that habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing—did not

state a claim on which federal habeas relief could be granted). Defects "in state collateral proceedings do not provide a basis for habeas relief." *Id.* (citing *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006); *Quince*, 360 F.3d at 1262; *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).

Eleventh Circuit precedent, therefore, forecloses Shumaker's challenge to the state postconviction court's alleged failure to liberally construe his *pro se* filings and provide him a "full and fair" postconviction proceeding. Shumaker is not entitled to federal habeas relief on Ground Six.

> **Ground Eight[11]** **"Trial counsel was ineffective by not moving for judgment of acquittal based upon that [sic] Defendant was immune from prosecution in violation of well-established federal law—U.S. Const. Amends. VI to have the assistance of counsel for his defense, V, VI, due process, and Florida's Stand Your Ground F.S. 776.032." (Doc. 1 at 16 in ECF)**

As with Grounds Five and Six, Shumaker provides no supporting facts for this claim. (Doc. 1 at 16 in ECF). Additionally, Shumaker admits that he did not present this ineffective assistance claim to the state courts. Shumaker explains that he did not have counsel during his Rule 3.850 proceeding. (Doc. 1 at 12 in ECF).

The State asserts a procedural default defense, but on a different theory—that Shumaker in fact presented this claim to the state courts in his amended Rule 3.850

---

[11] For context and efficiency, this court addresses Ground Eight before addressing Ground Seven.

motion, but the state court denied the motion as untimely; therefore, the claim is procedurally barred from federal review. (Doc. 19 at 40-41). The State argues that Shumaker cannot satisfy the "cause and prejudice" standard because the facts do not suggest a basis for a motion for judgment of acquittal ("JOA") based on Section 776.012(2), Florida Statutes. (Doc. 19 at 41-42).

### A.    Shumaker's Claim Is Legally Insufficient on Its Face

As with Ground Five above, Shumaker fails to satisfy Rule 2(c)'s pleading requirements. The mere fact that counsel did not move for a JOA does not establish deficient performance or prejudice under *Strickland*. This court may summarily deny relief under Rule 4, because this claim is legally insufficient on its face. *See Hittson*, 759 F.3d at 1265, 1269.

### B.    Shumaker's Claim is Procedurally Defaulted

This court may deny relief for the additional reason that the claim is procedurally defaulted. Shumaker does not dispute his procedural default, he merely argues that his default should be excused under the *Martinez* exception. Shumaker fails to demonstrate that his ineffective assistance claim is "substantial." *Martinez*, 566 U.S. at 14. A claim that is legally insufficient on its face, like the one here, is not "substantial." *See Hittson*, 759 F.3d at 1270.

Shumaker makes the conclusory assertion that he was immune from prosecution under Section 776.032, Florida Statutes. That statute provides:

(1) A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution . . . for the use or threatened use of such force by the person . . . against whom the force was used or threatened . . . .

. . . .

(4) In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

Fla. Stat. § 776.032(1), (4). Sections 776.012, 776.013, and 776.031 permit the use of force in defense of one's person, home, and property, respectively. Shumaker does not assert which statute permitted his use of force against Lewis, but since there is no evidence in the record indicating Shumaker was defending his home or property, Shumaker apparently is asserting that he was defending himself when he lacerated Lewis with the box cutter.

Shumaker was charged with aggravated battery *with a deadly weapon*. (Doc. 19, Ex. A at 1) (emphasis added). Section 776.012 provides, with respect to the use of deadly force:

(2) A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to

use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

Fla. Stat. § 776.012(2).

Nowhere in Shumaker's generalized claim does he allege facts that would allow a court to find that Kypreos had a factual basis to argue Shumaker was either preventing Lewis's commission of a forcible felony, or defending himself against imminent death or great bodily harm, at the time he lacerated Lewis with the box cutter. Because Shumaker has not alleged any facts warranting a finding of deficient performance or prejudice, his claim that Kypreos was ineffective for failing to argue immunity under Fla. Stat. § 776.032, is not "substantial." Shumaker is not entitled to federal habeas review of Ground Eight.

**Ground Seven**　　**"Defendant was deprived of effective assistance of counsel when counsel failed to present complete theory of self-defense in violation of well-established federal law—U.S. Const. Amends VI to have the assistance of counsel for his defense, V Due Process." (Doc. 1 at 18 in ECF)**

Again, Shumaker does not allege any facts supporting his conclusion that Attorney Kypreos was ineffective for "fail[ing] to present a complete theory of self-defense." (Doc. 1 at 16 in ECF). Concerning exhaustion, Shumaker initially states that he presented Ground Seven to the state courts, (Doc. 1 at 11 in ECF), but on the next page asserts that he did not present Ground Seven to the state courts because he

did not have counsel in his Rule 3.850 proceeding. (*Id*. at 12 in ECF (citing *Martinez, supra*)).

The State asserts that Shumaker presented this claim to the state court in his amended Rule 3.850 motion, which the state court denied as untimely; therefore, the claim is procedurally defaulted from federal review. (Doc. 19 at 37-38). The State argues that Shumaker cannot satisfy the "cause and prejudice" standard because the evidence did not support a theory of self-defense. (Doc. 19 at 38-40).

### A.    Shumaker's Claim Is Legally Insufficient on Its Face

Shumaker fails to satisfy Rule 2(c)'s pleading requirements, because he offers no facts supporting this claim. Shumaker does not identify any available evidence or argument counsel failed to present. Shumaker's bare, conclusory allegation does not establish deficient performance or prejudice under *Strickland*. This court may summarily deny relief under Rule 4, because this claim is legally insufficient on its face. *See Hittson*, 759 F.3d at 1265, 1269.

### B.    Shumaker's Claim Is Procedurally Defaulted

Shumaker's claim is also procedurally defaulted. The state court record confirms that Shumaker presented this claim to the state court in his Rule 3.850 proceeding as "Claim Nine." (Doc. 19, Attach. 5, Ex. L at 110-11). The state circuit court denied the amended Rule 3.850 motion as untimely. (*Id.*, Attach. 5, Ex. L at 123-24). The First DCA affirmed the circuit court's procedural ruling. (*Id.*, Attach.

5, Ex. M). As discussed in Grounds Two and Three, *supra*, the state court's procedural ruling constitutes an independent and adequate state rule of decision that this court must honor.

Shumaker cannot establish "cause" for his procedural default, because he fails to show that this ineffective assistance claim is "substantial." *Martinez*, 566 U.S. at 14. A claim that is legally insufficient on its face is not "substantial." *See Hittson*, 759 F.3d at 1270.

Even giving Shumaker the benefit of the facts listed in his amended Rule 3.850 motion, he still falls short. In Claim Nine of his amended Rule 3.850 motion, Shumaker argued that Kypreos should have presented evidence that one of the victim's statements to the police suggested that Shumaker had acted in self-defense. (Doc. 19, Attach. 5, Ex. L at 111). Lewis's statements to police are included in the officers' offense reports and Lewis's affidavit.[12] (Doc. 19, Attach 5, Ex. L at 117-22). Lewis's affidavit stated the following:

> I was asking the guy David Shoemaker [sic] for a Direct Express card with my name on it. He got mad at me say [sic] that he did not have it. My ex-girlfriend said that he had it. He told me that he was going to kill me if I don't leave. I just told him I want my card that I want [sic]. Then he got mad at me and cut me with a box cutter knife.

(Doc. 19, Attach 5, Ex. L at 117).

---

[12] Shumaker submitted copies of these documents with his amended Rule 3.850 motion. (Doc. 19, Attach 5, Ex. L at 117-22).

A description of two additional statements by Lewis are included in the offense reports. One statement was taken the day of the offense, February 12, 2012, and the other was taken two weeks later, on February 27, 2012. Those statements provided the following information:

> On 2/12/l012. Edward Lewis provided a sworn verbal statement saying that he confronted his ex-girlfriend's new boyfriend, later identified as Jessie Shumaker near L Street and Cervantes Street. Lewis stated he was attempting to retrieve a Direct Express debit card that he believes Shumaker to be in possession of. The two became involved in a verbal argument resulting in Lewis walking away and leaving without the debit card. According to Lewis, he crossed the street and realized Shumaker was following him. Lewis turned around and saw Shumaker approaching him with a knife. Fearing Shumaker was going to attack him, Lewis raised his arms in an attempt to defend himself. Shumaker began swinging the knife and struck Lewis on the left side of his face and again on his left ear.

> . . . .

> On 2/27/12, . . . Lewis swore to the following written statement: Lewis said, Monday, 2/20/12, at approximately 1600 hours, he went to 1717 W. Cervantes St., apt. 12, (Town and Country Motel) to speak to the suspect, David Shoemaker [sic]. Lewis said his ex-girlfriend, Laurie [sic] Ann Dixon told him that Shoemaker had his Direct Express Card. Lewis went to the apartment to ask Shoemaker for his card back. When Lewis made contact with Shoemaker, Shoemaker told Lewis he did not have his card and to leave him and his girlfriend, Dixon, alone. Lewis said Shoemaker threatened to kill him and they started fighting. Shoemaker pulled out a boxcutter and cut Lewis on the right side of his face and on the right lower side of Lewis [sic] ear.

(Doc. 19, Attach 5, Ex. L at 118-19).

Lewis also testified at trial and was subject to thorough cross-examination by defense counsel. (Doc. 19, Attach. 3, Ex. C at 173-88 (direct examination); Ex. D at 191-208 (cross-examination)). Shumaker has not shown that Lewis's prior out-of-court statements were admissible, nor does he explain how Lewis's statements supported a theory of self-defense. Nothing in Lewis's statements suggests that Shumaker was either preventing Lewis from committing a forcible felony or defending himself against imminent death or great bodily harm when he (Shumaker) cut Lewis with the box cutter.

Shumaker also argued in his amended Rule 3.850 motion, that his own testimony would have supported a self-defense theory, and that Attorney Kypreos was ineffective for failing to present it. (Doc. 19, Attach. 5, Ex. L at 111). Shumaker alleges that he would have explained his state of mind at the time of the confrontation, *i.e.,* he was so afraid of Lewis at the time of the confrontation that he had applied for a restraining order against Lewis prior to the confrontation. (Doc. 19, Attach. 5, Ex. L at 111).[13]

The trial transcript demonstrates that Shumaker, not Attorney Kypreos, was responsible for Shumaker's decision not to testify:

---

[13] One of the offense reports includes Shumaker's post-arrest statements to Officer Stackpole, in which Shumaker told Stackpole that **after the incident**, he "went to the court house to get a restraining order against Lewis because he kept harassing him." (Doc. 19, Attach. 5, Ex. L at 121).

(Defendant sworn)

THE COURT:  And you are Jessie Shumaker, the defendant in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  You may put your hand down, sir. Mr. Shumaker, do you understand that in a criminal trial you have the right to remain silent –

THE DEFENDANT:  Yes.

THE COURT:  – and you cannot be required to testify? Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And if you do not testify, the Prosecutor cannot make any comment about you not testifying, do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The jury has been given instructions before and they'll be given more instructions if you do not testify that they are not to consider that in any way in deciding their verdict.

THE DEFENDANT:  Yes, sir.

THE COURT:  They'll be instructed that it is a constitutional right not to testify. Do you understand that?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  Okay. Do you understand that, as I said, you've heard my ruling that because the statements—the exculpatory statements that you made to the police officer were offered in evidence, that the State is going to be entitled to offer evidence of your crimes of—of your

convictions of felony offenses, just the number of times. Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And so if you've testified, the State would not be able to offer the actual crimes that you were convicted of. If you took the stand and testified, there would be—that evidence would have already been in, then, you know, so there would be no other evidence about it.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  If you did testify, though, the Prosecutor would be entitled to cross-examine you. Do you understand that?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  And Mr. Kypreos indicated to me that you and he have talked about whether or not you will testify.

THE DEFENDANT:  Yes, sir.

THE COURT:  *The decision should be your decision* made after listening to his advice.

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you had an adequate opportunity to talk to Mr. Kypreos about whether or not you will testify?

THE DEFENDANT:  Yes, sir, I did.

THE COURT:  And *what is your decision*?

THE DEFENDANT:  *My decision is I don't wish to testify*.

(Doc. 19, Attach. 3, Ex. D at 283-85) (emphasis added)

Based on all of the foregoing, Shumaker has not established that his ineffective assistance claim concerning Attorney Kypreos's alleged failure to present a complete theory of self-defense, is "substantial." Shumaker is not entitled to federal habeas review of Ground Seven.

|  |  |
|---|---|
| **Ground Nine** | **"Trial counsel was ineffective when he failed to object to prosecutorial misconduct and request a state court _Richardson_ hearing concerning witness Laurie [sic] Dixon, in violation of well established federal Const. U.S. Amend. VI to be confronted with the witnesses against him and V Due Process."(Doc. 1 at 16 in ECF)** |
| **Ground Ten** | **"Trial counsel was ineffective when he failed to object to prosecutorial misconduct when the State failed to disclose promises of leniency concerning witness Laurie [sic] Dixon in violation of well established _Brady_, 373 U.S. 83 (1963) and _Demarco vs. U.S._, 415 U.S. 449 (1974), _Ring v. U.S._, 419 U.S. 18 (1974), _U.S. v. Bagley_, 473 U.S. 667 (1985), U.S. Const. Amend. V, XIV Due Process" (Doc. 1 at 16 in ECF)** |

Again, Shumaker does not allege any facts to support either of these claims. (Doc. 1 at 16 in ECF). Concerning exhaustion, Shumaker states that he did not present Ground Nine to the state courts, but that he did present Ground Ten. (Doc. 1 at 11-12 in ECF). Shumaker asserts that his failure to present Ground Nine was caused by his lack of counsel in the Rule 3.850 proceeding, and that the lack of counsel excuses his procedural default. (Doc. 1 at 12 in ECF).

The State asserts that neither claim was presented to the state courts and that both are procedurally defaulted. (Doc. 19 at 43, 46). The State also argues that Shumaker cannot obtain federal review through the "cause and prejudice" exception, because neither claim is substantial. (*Id.* at 44-48).

### A.    Shumaker's Claims Are Legally Insufficient on Their Face

Shumaker's conclusory assertion that the prosecutor violated the rules of discovery with regard to Dixon's testimony—devoid of any explanation how the State violated the rules—is insufficient to establish deficient performance or prejudice under *Strickland* based on counsel's failure to request a *Richardson* hearing.[14] Similarly, Shumaker's conclusory assertion that the prosecutor failed to disclose "promises of leniency" made to Dixon, without enlightening this court as to what those promise were and whether Kypreos was aware of them, does not establish *Strickland* deficient performance and prejudice for failing to object. This court may summarily deny relief under Rule 4, because Grounds Nine and Ten are legally insufficient on their face. *See Hittson*, 759 F.3d at 1265, 1269.

---

[14] A *Richardson* hearing is held to determine whether the State committed a discovery violation in contravention of the Florida Rules of Criminal Procedure and, if so, whether the non-compliance resulted in prejudice to the defendant's ability to prepare for trial. *Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971).

### B.    Shumaker's Claims Are Procedurally Defaulted

An additional basis for denying relief is Shumaker's procedural default. The state court record confirms that Shumaker did not present either of these ineffective assistance claims on direct appeal or in his Rule 3.850 proceeding. (Doc. 19, Attach. 3, Ex. F (direct appeal brief); Doc. 19, Attachs. 4-5, Ex. L at 1-75, 82-122 (original and amended Rule 3.850 motions)). Because Shumaker is barred by state procedural rules from returning to state court to present them, Fla. R. Crim P. 3.850(b), (h), they are procedurally defaulted from habeas review.

Shumaker's attempt to show "cause" under *Martinez* fails, because neither claim is "substantial." *Martinez*, 566 U.S. at 14. A claim that is legally insufficient on its face is not "substantial." *See Hittson*, 759 F.3d at 1270. Additionally, this court has independently reviewed the record and has not discovered any fact that would support a finding that the prosecutor engaged in misconduct concerning Dixon's testimony. Because Shumaker has not alleged any facts to warrant a finding of deficient performance and prejudice under *Strickland*, his claim is not "substantial," and his procedural default cannot be excused. Shumaker's procedural default bars federal habeas review of Grounds Nine and Ten.

**Ground Eleven**    **"Trial counsel was ineffective when he conceded Petitioner's guilt in violation of well established *Fla. v. Nixon*, 543 U.S. 175, 185 (2004)" (Doc. 1 at 17 in ECF)**

Again, Shumaker does not allege any facts supporting this claim. (Doc. 1 at 17 in ECF). Shumaker admits he did not present this claim to the state courts. (*Id.* at 12 in ECF). Shumaker cites *Martinez* and explains that he did not have counsel during his Rule 3.850 proceeding. (*Id.*). The State agrees that Ground Eleven is unexhausted and procedurally defaulted. (Doc. 19 at 48-49). The State argues that Shumaker fails to meet the "cause and prejudice" standard. (Doc. 19 at 49-50).

The state court record confirms that Shumaker did not present this ineffective assistance claim on direct appeal or in his Rule 3.850 motion. (Doc. 19, Attach. 3, Ex. F (direct appeal brief); Doc. 19, Attachs. 4-5, Ex. L at 1-75, 82-122 (original and amended Rule 3.850 motions)). Because Shumaker is barred by state procedural rules from returning to state court to present this claim, Fla. R. Crim P. 3.850(b), (h), it is procedurally defaulted from habeas review.

Shumaker claims that trial counsel was ineffective because he conceded Shumaker's guilt. Shumaker does not identify when or how counsel allegedly conceded his guilt. Shumaker relies on *Florida v. Nixon, supra*, to support this claim.

In *Nixon*, the Supreme Court held that an attorney does not have the authority—absent a client's explicit consent—to enter a guilty plea on behalf of a client, but that counsel's concession of some level of guilt at trial is not the functional

equivalent of a guilty plea. 543 U.S. at 187-88. The Court explained that despite the concession of guilt by counsel in Nixon's case, Nixon retained the rights accorded a defendant in a criminal trial, including the right to have the State prove every element of the offense beyond a reasonable doubt. *Id.* at 188. The Court also explained that a concession of guilt was not presumed to be deficient performance and, under *Strickland*, the defendant still must prove "counsel's concession trial strategy was unreasonable." *Id.* at 189. Additionally, where counsel's concession of guilt "does not rank as a failure to function in any meaningful sense as the Government's adversary," *Cronic*'s presumption of prejudice does not apply, and the petitioner must demonstrate prejudice under *Strickland*. *Nixon*, 543 U.S. at 190 (internal quotation marks and citation omitted). The Court found that Nixon had not shown that he received ineffective assistance of counsel when counsel acknowledged, during the guilt phase of his capital trial, that Nixon caused the victim's death and urged the jury to focus on the penalty phase and recommend life in prison instead of death by electrocution. *Id.* at 182-83. Although *Nixon* was a capital case, the principles set forth apply in the non-capital context.

The record refutes Shumaker's allegation that Attorney Kypreos conceded his guilt. The trial transcript reveals that Kypreos told the jury during his opening statement that they would hear that Lewis initially identified someone else as his

assailant, and that Lewis and Shumaker had two different stories regarding their

argument about the Direct Express card:

> So after this incident allegedly occurred . . . where Mr. Lewis claims
> there was a physical altercation, the defendant, in his statement, denied
> there was a physical altercation. His side of the story, he was the one
> being stalked by Mr. Lewis trying to get the card and then Mr. Lewis
> saying he is trying to contact the defendant and trying to get this card,
> and then there are two stories as to what actually happened are very . .
> . different. . . . So they both have a different, different version as to
> whether or not the defendant, Mr. Shumaker, actually cut him with a
> knife.
> . . . .
> [H]e tells the police, you know, I believe they're [the perpetrator] over
> in Town and Country in room 12, I believe the gentleman's in that
> room. Okay.
>
> The police go to that room. They also have Mr. Lewis transported
> in the emergency vehicle because he's being tended to at that time. Mr.
> Lewis is in the emergency vehicle and the police bring a Daniel Earl
> Stewart out to show to him. They bring him from 12. Mr. Stewart had
> a box cutter on him with a small blade.
>
> They bring him out of room 12, show him to Mr. Lewis, and then
> you may hear conflicting statements as to what happened then at the
> show up. You may hear testimony essentially to the effect that Mr.
> Lewis said that was the guy, but then backed off and said he was unsure.

(Doc. 19, Attach. 3, Ex. C at 170-71). Attorney Kypreos told the jury they had to

decide whether the State proved Shumaker actually committed a battery, and if they

found that the State proved a battery beyond a reasonable doubt, then they had to

decide whether a box cutter was actually used and whether it was used as a deadly

weapon. (Doc. 19, Attach. 3, Ex. C at 167-72).

When the State presented its case, the jury heard the evidence described by Attorney Kypreos in his opening statement. The jury also heard that Lewis identified Shumaker as the perpetrator from a photo line-up. (Doc. 19, Attach. 3, Ex. C at 187).

In Kypreos's closing argument, he argued that the State did not prove beyond a reasonable doubt that Shumaker was the person with the box cutter, or that he otherwise intentionally touched or struck Lewis against his will. (Doc. 19, Attach. 3, Ex. D at 312-22). Kypreos also argued that even if the jury believed Shumaker was the person who cut Lewis on his ear and face, the evidence did not show that Shumaker used the box cutter in a way likely to produce death or great bodily harm. (Doc. 19, Attach. 3, Ex. D at 312-22). Kypreos did not concede Shumaker's guilt.

Shumaker's generalized claim that Attorney Kypreos was ineffective for conceding his guilt is not "substantial." Because Shumaker has not established cause for his procedural default under *Martinez*, he is not entitled to habeas review of Ground Eleven.

**Ground Twelve**     **"Counsel misinformed Petitioner to 'NOT' accept the State's plea deal that was favorable to Petitioner in violation of well established U.S. Const. U.S. Amend. VI Right to Counsel."(Doc. 1 at 17 in ECF)**

Shumaker's does not allege any facts in support of Ground Twelve. (Doc. 1 at 17 in ECF). Shumaker admits that he did not present this ineffective assistance

claim to the state courts. (Doc. 1 at 12 in ECF). Shumaker cites *Martinez*, and explains that he did not have counsel during his Rule 3.850 proceeding. (*Id.*).

The State agrees that Ground Twelve is unexhausted and procedurally defaulted. (Doc. 19 at 51-52). The State argues that Shumaker fails to qualify for the "cause and prejudice" exception. (Doc. 19 at 52-53).

### A.   Shumaker's Claim Is Legally Insufficient on Its Face

Shumaker's generalized allegation of ineffectiveness fails to satisfy Rule 2(c)'s pleading requirements. Shumaker has not alleged any facts describing the alleged plea deal, counsel's alleged "misinform[ation]," or Shumaker's desire to enter a plea. The District Court may summarily deny relief under Rule 4, because Ground Twelve is legally insufficient on its face.  *See Hittson*, 759 F.3d at 1265, 1269.

### B.   Shumaker's Claim Is Procedurally Defaulted

Shumaker's claim is also procedurally defaulted. The state court record confirms that Shumaker did not present this claim on direct appeal or in his Rule 3.850 proceeding. (Doc. 19, Attach. 3, Ex. F (direct appeal brief); Doc. 19, Attachs. 4-5, Ex. L at 1-75, 82-122 (original and amended Rule 3.850 motions)). Because Shumaker is barred by state procedural rules from returning to state court to present this claim, Fla. R. Crim P. 3.850(b), (h), it is procedurally defaulted from habeas review.

Shumaker's attempt to show "cause" under *Martinez* fails, because his claim is not "substantial." *Martinez*, 566 U.S. at 14. A claim that is legally insufficient on its face is not "substantial." *See Hittson*, 759 F.3d at 1270.

Even giving Shumaker the benefit of combing the state court record for a factual basis for this claim, Shumaker still falls short. A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. The two-part test articulated in *Strickland* applies to claims that counsel was ineffective during the plea negotiation process. *Lafler*, 566 U.S. at 162-63 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 566 U.S. at 145-49 (same as to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48 (1985) (same as to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S.

at 57 (quoting *Strickland*, 466 U.S. at 688). In plea negotiations, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57 (quoting *McMann*, 397 U.S. at 771).

*Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of plea negotiations, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. If a plea offer has been rejected due to counsel's allegedly deficient performance, a defendant shows prejudice by demonstrating a reasonable probability that: (1) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel during plea negotiations; (2) the plea would have been entered without the state canceling it or the trial court refusing to accept it; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *See Lafler*, 566 U.S. at 164.

The only reference to a plea deal in the state court record is the letter Shumaker wrote to the trial court on July 27, 2013. (Doc. 19, Attach. 1, Ex. A at 18-21). In that letter, Shumaker complained that Attorney Kypreos was "biased" against him because Kypreos believed Shumaker was guilty and had *encouraged* him to accept

a plea offer that would have entailed serving 15 years in prison. (Doc. 19, Attach. 1, Ex. A at 20; *see also id.*, Ex. A at 13 (letter signed by Shumaker and Henry Lawler dated March 19, 2013, complaining that counsel had encouraged Shumaker to take a 15-year plea deal)). According to Shumaker's Criminal Punishment Code Scoresheet, which is also part of the record, the maximum sentence Shumaker faced was 30 years of imprisonment. (Doc. 19, Attach. 2, Ex. B at 212-15). Shumaker was sentenced to 20 years in prison.

Nowhere in Shumaker's generalized claim does he allege any facts that would allow a court to find that Kypreos "misinformed" him about a 15-year plea offer or any other offer. Moreover, contrary to Shumaker's postconviction allegation, his pretrial statements in his letter confirm that counsel advised him to *accept* a plea agreement that would have entailed 15-years of imprisonment.

Shumaker's ineffective assistance claim is not "substantial." Accordingly, Shumaker cannot rely on *Martinez* to excuse his procedural default. Shumaker's procedural default bars federal habeas review of Ground Twelve.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Jessie Lee Shumaker*, Escambia County Circuit Court Case Nos. 2012-CF-1230, 2012-CF-4987, and 2012-CF-5597, be **DENIED**.

2.     The District Court **DENY** a certificate of appealability.

3.     The clerk of court close this case file.

At Panama City, Florida, this 4th day of December, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to**

object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.